UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

LORETTA C.,

                 Plaintiff,

        v.

FRANK BISIGNANO, *Commissioner of Social Security*,

                 Defendant.

**MEMORANDUM & ORDER**
24-CV-05122 (HG)

**HECTOR GONZALEZ**, United States District Judge:

Plaintiff Loretta C.[1] brings this action against the Commissioner of the Social Security

Administration ("SSA"), Frank Bisignano.[2]  She seeks judicial review, pursuant to 42 U.S.C.

§ 405(g), of the Commissioner's final decision denying her application for Social Security

disability benefits.  *See* ECF No. 1 (Compl.).  Before the Court are the parties' cross-motions for

judgment on the pleadings.  *See* ECF No. 7 (Plaintiff's Motion[3]); ECF No. 9 (Defendant's

Motion); ECF No. 10 (Plaintiff's Reply).  Plaintiff seeks remand of this action to the SSA, while

Defendant asks the Court to affirm the SSA's decision denying benefits.  For the reasons

explained below, Defendant's motion is GRANTED and Plaintiff's motion is DENIED.

---

[1]  Plaintiff's name has been partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.  The Clerk of Court has modified the docket to reflect Plaintiff's abbreviated name.

[2]  Pursuant to Rule 25(d), Commissioner Bisignano is automatically substituted for the generic Commissioner of Social Security in this case.  *See, e.g.*, *Rebecca M. v. Bisignano*, No. 24-cv-1108, 2025 WL 1583399, at *1 n.1 (N.D.N.Y. June 4, 2025).  The Clerk of Court has modified the docket to reflect Defendant's name.

[3]  Plaintiff does not describe her brief as a motion, but the Court construes it as a Rule 12(c) motion.  *See* Supp. R. for Soc. Sec. Actions R. 4(c); *Deborah K. v. Comm'r of Soc. Sec.*, No. 24-cv-00326, 2025 WL 399448, at *1 n.1 (W.D.N.Y. Feb. 5, 2025) (construing an incorrectly styled plaintiff's brief as a Rule 12(c) motion).

## **BACKGROUND**

Plaintiff first applied for disability benefits on July 19, 2021, alleging disability based on

"illnesses, injuries or conditions" related to her "[n]eck," "[b]ack," "[d]epression," and

"[a]nxiety."  ECF No. 6 at 10, 90 (Administrative Record; "AR").[4]  The SSA initially

disapproved Plaintiff's claim on March 16, 2022.  *Id.* at 127–29.  Her request for reconsideration

of that decision was subsequently denied on August 15, 2022.  *Id.* at 141–51.  Plaintiff then

requested a hearing before an SSA Administrative Law Judge ("ALJ"), which took place on June

1, 2023.  *Id.* at 59–87.  At the hearing, Plaintiff was represented by an attorney, and a vocational

expert ("VE") also testified.  *Id.* at 59.

On July 6, 2023, the ALJ issued his decision, determining that Plaintiff was not disabled

within the meaning of the Social Security Act since November 1, 2019.  *Id.* at 24.  The ALJ

reached the following conclusions:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2024.
2. The claimant has not engaged in substantial gainful activity since November 1, 2019, the alleged onset date (20 CFR 404.1571 *et seq.*).
3. The claimant has the following severe impairments:  degenerative disc disease; arthritis in the knees, obesity (20 CFR 404.1520(c)).
4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity ["RFC"] to perform sedentary work as defined in 20 CFR 404.1567(a) except she can occasionally reach overhead with the bilateral upper extremities.  She can occasionally climb ramps and stairs, but can never climb ladders, ropes, or scaffolds.  She can occasionally balance, stoop, kneel, crouch, and crawl.
6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).
7. The claimant was born on May 1, 1963, and was 56 years old, which is defined as an individual of advanced age, on the alleged disability onset date.  The

---

[4]      Citations to ECF refer to the pages assigned by the Electronic Case Files System.  All AR page citations refer to the bold Bates stamp at the bottom right corner of each page in the AR. Unless otherwise indicated, when quoting cases, the parties' papers, and the AR, all internal quotation marks, alteration marks, emphases, footnotes, and citations are omitted.

claimant subsequently changed age category to closely approaching retirement age (20 CFR 404.1563).

8. The claimant has at least a high school education (20 CFR 404.1564).

9. The claimant has acquired work skills from past relevant work (20 CFR 404.1568).

10. Considering the claimant's age, education, work experience, and [RFC], the claimant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy (20 CFR 404.1569, 404.1569a and 404.1568(d)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from November 1, 2019, through the date of this decision (20 CFR 404.1520(g)).

*Id.* at 12–24. The SSA's Appeals Council denied Plaintiff's request for review on March 11, 2024, rendering the ALJ's decision the final decision of the Commissioner. *Id.* at 1–3. Plaintiff then sought review in this Court by initiating this action on July 23, 2024. ECF No. 1.

## **LEGAL STANDARD**

When a plaintiff challenges an ALJ's decision as unsupported by substantial evidence, the Court must "conduct a plenary review of the administrative record" and determine "whether the ALJ applied the correct legal standards and whether the ALJ's determination is supported by substantial evidence." *Rucker v. Kijakazi*, 48 F.4th 86, 90–91 (2d Cir. 2022). "The substantial evidence standard is a very deferential standard of review—even more so than the clearly erroneous standard." *Schillo v. Kijakazi*, 31 F.4th 64, 74 (2d Cir. 2022). But the standard is "not merely hortatory: It requires relevant evidence which would lead a reasonable mind to concur in the ALJ's factual determinations." *Colgan v. Kijakazi*, 22 F.4th 353, 359 (2d Cir. 2022). The Court is therefore "required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Schillo*, 31 F.4th at 74. Once an ALJ has made findings of fact, however, the Court "can reject those facts only if a reasonable factfinder would *have to conclude otherwise*." *Id.* (emphasis in original). Put another way, "[i]f evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *Id.* Although an ALJ is not required to "reconcile[]" "every conflict in [the]

3

record," the ALJ must describe "the crucial factors in any determination . . . with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019).

In contrast to the very deferential standard of review applicable to evidentiary challenges, "[a]n ALJ's failure to apply the correct legal standard constitutes reversible error if that failure might have affected the disposition of the case." *Lopez v. Berryhill*, 448 F. Supp. 3d 328, 341 (S.D.N.Y. 2020) (citing *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008)). However, remand to the SSA is "unnecessary" "[w]here application of the correct legal principles to the record could lead only to the same conclusion" as the one reached by the ALJ. *Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010).

## DISCUSSION

On appeal, Plaintiff takes issue with the ALJ's assessment of her RFC, claiming that it was infected by legal error and unsupported by substantial evidence. *See* ECF No. 7 at 3. As a reminder, the ALJ concluded "that the claimant has the [RFC] to perform sedentary work as defined in 20 CFR 404.1567(a) except she can occasionally reach overhead with the bilateral upper extremities. She can occasionally climb ramps and stairs, but can never climb ladders, ropes, or scaffolds. She can occasionally balance, stoop, kneel, crouch, and crawl." AR at 15. The Court begins its analysis with a brief discussion of how an ALJ determines a claimant's RFC, including as applied to this case, and then addresses Plaintiff's challenge.

### I.    Determining RFC and Disability

ALJs must employ a "five-step sequential evaluation process" to determine whether a claimant is disabled, proceeding through each step until a determination can be reached. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At step one, the ALJ considers the claimant's work activity. *Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is performing substantial

gainful activity, then the claimant is not disabled.  At step two, the ALJ determines whether the claimant suffers from "a severe medically determinable physical or mental impairment" or "combination of impairments" that meets the twelve-month durational requirement.  *Id.* § 404.1520(a)(4)(ii) (referencing *id.* § 404.1509); *id.* § 416.920(a)(4)(ii) (referencing *id.* § 416.909).  If the claimant does not have a severe impairment or combination of impairments that meets the durational requirement, then the claimant is not disabled.  At step three, the ALJ considers whether the claimant's medical impairment or impairments appear on a list maintained by the SSA that identifies and defines impairments that are of sufficient severity as to prevent any gainful activity.  *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the claimant's impairment meets or equals one of the listings, then the ALJ will find the claimant disabled.  If not, the ALJ proceeds to step four.

At step four, the ALJ evaluates the claimant's past relevant work and RFC, defined as "the most [the claimant] can still do despite [her] limitations."  *Id.* § 404.1545(a)(1); *see id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  Past work is relevant to this analysis if the claimant performed the work within the past five years,[5] the work qualifies as substantial gainful activity, and the work lasted long enough for the claimant to learn how to do it.  *Id.* §§ 404.1560(b)(1)(i), 416.960(b)(1)(i).  If the claimant's RFC permits her to perform past relevant work, she is not disabled.  If a claimant cannot perform past relevant work, the ALJ proceeds to step five and determines whether, in light of her RFC, age, education, and work experience, a claimant can perform other substantial gainful employment.  *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  "The claimant bears the burden of proof in the first four steps . . . ."  *Schillo*, 31 F.4th at 70.  "In step

---

[5]    At the time of the ALJ's decision, Section 404.1560(b)(1) provided for a 15-year lookback.  Although not directly relevant in this appeal, the subsequent amendment to five years does not function retroactively, so the Court applies the same version of the rule that the ALJ did.  *See Paulette M. v. Comm'r of the Soc. Sec. Admin.*, No. 23-cv-04668, 2025 WL 383656, at *6 n.5 (E.D.N.Y. Feb. 4, 2025).

five, the burden shifts, to a limited extent, to the Commissioner," but the Commissioner "need

not provide additional evidence of the claimant's [RFC]" at that stage.  *Id.*

## II.    Application to this Case

Here, the ALJ proceeded through all five steps.  At step one, he found that Plaintiff had

not engaged in substantial gainful activity in the relevant period.  AR at 12.  At step two, the ALJ

found that Plaintiff had the severe impairments of degenerative disc disease, arthritis in the

knees, and obesity.  *Id.*  As part of his inquiry, the ALJ also analyzed Plaintiff's depression.  *Id.*

For this task, the ALJ considered the relevant medical evidence as well as the disability

regulations for the evaluation of mental disorders.  *Id.* at 12–14.  Specifically, the ALJ looked to

20 C.F.R. Part 404, Subpart P, Appendix 1, which supplies what are known as the "paragraph B"

criteria—corresponding to "four broad functional areas"—used "to determine the degree, if any,

of [a] claimant's mental impairment."  *Zacharopoulos v. Saul*, 516 F. Supp. 3d 211, 231

(E.D.N.Y. 2021).  Those areas are:  "(1) understanding, remembering, or applying information;

(2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or

managing oneself."  *Id.* (citing 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3)).  In this case, the

ALJ found that Plaintiff had no limitations in the first two categories; with respect to the latter

two categories, the ALJ found that Plaintiff had only mild limitations.  AR at 13–14.  Applying

20 C.F.R. § 404.1520a(d)(1), the ALJ therefore concluded that Plaintiff's mental impairment was

non-severe.  *Id.* at 14.  He then remarked:

> The limitations identified in the "paragraph B" criteria are not a [RFC] assessment
> but are used to rate the severity of mental impairments at steps 2 and 3 of the
> sequential evaluation process.  The mental [RFC] assessment used at steps 4 and 5
> of the sequential evaluation process requires a more detailed assessment.  The
> following [RFC] assessment reflects the degree of limitation I have found in the
> "paragraph B" mental function analysis.

*Id.*  Then, at step three, the ALJ concluded that none of Plaintiff's severe conditions were "*per*

*se*" disabling.  *Id.* at 15; *see Shaw v. Chater*, 221 F.3d 126, 132 (2d Cir. 2000).

The ALJ considered the record evidence and reached his RFC determination, as previously described. AR at 15–22. As relevant here, the RFC analysis was limited to Plaintiff's physical impairments; there was no further mental analysis. Relying on the testimony of the VE, the ALJ concluded at step four that Plaintiff's RFC prevented her from performing her past relevant work as a bank teller or lead bank teller. *Id.* at 22. However, at step five, the ALJ, in considering Plaintiff's age of 56, high school education, recordkeeping skill acquired from past relevant work, and RFC, determined that she could work as a cashier or bill sorter, for which there are a sufficient number of available positions in the national economy. *Id.* at 23–24. Accordingly, Plaintiff's claim failed at step five and the ALJ concluded that she was not disabled. *Id.* at 24.

### III.    Challenge to the RFC

Having reviewed the entire record, the Court concludes that any error in the RFC formulation was harmless and that the RFC was supported by substantial evidence. On appeal, Plaintiff presents just one narrow challenge: "The ALJ erred by failing to consider the non-severe mental impairments in the RFC assessment." ECF No. 7 at 9. She takes particular issue with the ALJ's statement in the step two analysis that "[t]he limitations identified in the 'paragraph B' criteria are not a [RFC] assessment" and that "[t]he mental [RFC] assessment used at steps 4 and 5 . . . requires a more detailed assessment," AR at 14, arguing that that "promised 'more detailed assessment' was not provided," ECF No. 7 at 9. She further observes that the step four and step five analysis contained no further discussion of mental impairments. *Id.*

Plaintiff's position has some merit. The ALJ is required to "consider the limiting effects of all [of claimant's] impairment(s), even those that are not severe, in determining [the RFC]." 20 C.F.R. § 404.1545(e). That being said, it is not immediately clear to the Court that the failure to explicitly discuss the non-severe impairment in the RFC analysis constitutes error in the first

instance.  First, on its face, the regulation requires only "[consider]ation" of all impairments.  It does not purport to impose any particular articulation requirements on the ALJ.  Thus, so long as the ALJ considered all impairments, it would seem not to matter *where* in the decision he did so. Second, substantively, Section 404.1545 "does not mean . . . that the ALJ must include a specific limitation in the RFC corresponding to each of the claimant's non-severe impairments" because "by definition, an impairment which is not severe does not significantly limit the claimant's physical or mental ability to do basic work activities."  *DuBois v. Comm'r of Soc. Sec.*, No. 20-cv-8422, 2022 WL 845751, at *5 (S.D.N.Y. Mar. 21, 2022).  Nevertheless, Defendant appears to concede the point, urging the Court to look to authority applying harmless error analysis in this situation.  *See* ECF No. 9-1 at 18–19 (citing *Spinato v. Comm'r of Soc. Sec.*, No. 20-cv-3952, 2023 WL 8565536 (E.D.N.Y. Dec. 11, 2023)).  The Court therefore follows the parties' lead and assumes that the ALJ committed error when he failed to "include any limitations related to Plaintiff's mental impairments in the RFC or explain any reason for that omission."  *Sandra J. v. Comm'r of Soc. Sec.*, No. 21-cv-00272, 2023 WL 3734289, at *5 (W.D.N.Y. May 31, 2023).

The next step is to determine whether that error was not harmless and therefore warrants remand to the SSA.  *See Spinato*, 2023 WL 8565536, at *5.  The error was not harmless if the ALJ "fail[ed] to account for functional limitations associated with non-severe impairments in crafting an RFC."  *Id.*  The error was harmless "absent evidence that these impairments contributed to any functional limitations."  *Id.*  Here, the Court agrees with Defendant that Judge Komitee's decision in *Spinato* is instructive and, consistent with that ruling, concludes that this case falls into the latter, harmless category.  *See* ECF No. 9-1 at 18–19.  In *Spinato*, the ALJ concluded at step two that the claimant's non-severe impairments, including depression and breast cancer, "did not result in any continuous functional limitations" and that "any minimal limitations attributable to the claimant's non-severe impairments ha[d] been accommodated by

the RFC assessment." 2023 WL 8565536, at *5. The ALJ did not discuss those non-severe

limitations again in the RFC formulation. *Id.* Because neither the record nor the plaintiff's brief

established any functional limitations resulting from the depression and breast cancer, the error

was harmless because "the record as a whole show[ed] that [the ALJ] did evaluate those

impairments and their possible limiting effects and found those limitations to be non-existent or

*de minimis*." *Id.*

   This case is similar. The ALJ conducted a thorough review of the evidence related to

Plaintiff's depression symptoms and found no limitations in two of the four functional areas and

only mild limitations in the other two. AR at 12–14. Plaintiff does not challenge that analysis.

The ALJ also stated that he considered "all of [Plaintiff]'s medically determinable impairments,

including those that are not severe, when assessing [her RFC]" and specifically stated that his

RFC analysis "reflect[ed] the degree of limitation [he] . . . found in the 'paragraph B' mental

function analysis." *Id.* at 13–14. Plaintiff does not engage with *Spinato* in reply; rather, she

presses on the ALJ's statement that "[t]he mental [RFC] assessment used at steps 4[ ]and 5 of the

sequential evaluation process requires a more detailed assessment." ECF No. 10 at 4–5.

However, courts reject the argument that, by using this boilerplate language, the ALJ imposes on

himself an enforceable "promise[]" to provide additional substantive RFC analysis:

> To conclude that remand is required in every case where the ALJ fails to provide
> some specific discussion in the section analyzing the RFC finding of why he or she
> chose not to incorporate limitations based on non-severe mental impairments
> despite the fact that the ALJ has otherwise explained why the evidence does not
> support any such mental limitations (and where a review of the evidence itself does
> not reveal evidence that the ALJ ignored or misinterpreted) would be to elevate
> form over function.

*Donna L.L. v. Comm'r of Soc. Sec.*, No. 23-cv-0655, 2024 WL 3738067, at *3 (N.D.N.Y. Aug.

9, 2024), *adopting in part and rejecting in part report and recommendation*, 2024 WL 4133798,

at *4 (N.D.N.Y. May 31, 2024) (identifying the same boilerplate); *Cynthia M. v. Comm'r of Soc. Sec.*, No. 23-cv-00955, 2024 WL 4289537, at *5, *7–9 (W.D.N.Y. Sept. 25, 2024) (same).

Against this backdrop, any error emerges as a purely procedural one. Critically, Plaintiff never articulates what that more detailed assessment she says was necessary would have produced in terms of a more restrictive RFC. Rather, she just speculates that the "error cannot be said to be harmless" because "[h]ad limitations in concentration, persistence and pace been included [in the RFC], it is likely that the transferrable skills found by the ALJ would not have been available." ECF No. 7 at 11. But just as the plaintiff in *Spinato* failed to explain or point to evidence linking her non-severe limitations to lifting, walking, or standing, 2023 WL 8565536, at *5, Plaintiff here similarly does not connect a mild limitation in concentration to the one transferrable skill of recordkeeping, AR at 23.[6] Similarly, she highlights that the VE testified that being off-task for more than 15% of the workday would preclude work, and reasons that "the outcome of the claim would likely have differed had the ALJ considered the non-severe mental impairments in the RFC assessment." ECF No. 10 at 5–6. But that is just conjecture as

---

[6]    Plaintiff's more detailed arguments miss the mark. For example, she partially quotes a regulation stating that "[i]n order to find transferability of skills to skilled sedentary work for individuals who are of advanced age (55 and over), there must be very little, if any, vocational adjustment required in terms of tools, work processes, work settings, or the industry." 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 201.00(f). It is unclear how that applies here. By her own account, the two jobs the ALJ provided at step five are only semi-skilled. ECF No. 7 at 11. She posits that "limitations in concentration, persistence, and pace are more likely to have an impact on the transferable skills for a person of" Plaintiff's age, ECF No. 10 at 7, and initially highlighted that even semi-skilled work demands functions like concentration, ECF No. 7 at 11. However, that argument looks past the decision, in which the ALJ specified that he incorporated his step two analysis into the RFC and repeatedly took account of Plaintiff's age at step five. AR at 14, 23–24. Similarly, for the reasons provided by Defendant, *see* ECF No. 9-1 at 17, the Court is unpersuaded that the ALJ's analysis would have been any different had he explicitly discussed Plaintiff's difficulty in performing "serial sevens" concentration exercises at two consultative exams, *see* ECF No. 7 at 11–12. In any event, even under Plaintiff's own view of the error in this case, such a searching examination of the evidence would not have been required in a more detailed RFC analysis on remand. *See Daniels v. Berryhill*, 270 F. Supp. 3d 764, 775 (S.D.N.Y. 2017) ("[A]n ALJ is not required to address every aspect of the record in his opinion or comb the record to reconcile every conflicting shred of medical testimony.").

she does not even try to link the mild impairments to a greater need for off-task time. *See Reddy v. Comm'r of the SSA*, No. 23-cv-07947, 2025 WL 21942, at *4 (E.D.N.Y. Jan. 3, 2025). Where a challenge to an RFC assessment would not trigger remand and a plaintiff identifies no evidence that a more restrictive RFC was actually required, she may not nevertheless obtain remand just by repackaging her objection as an articulation error. *See Spinato*, 2023 WL 8565536, at *5 ("[F]or an impairment of any kind to be included in the RFC analysis, it must cause or at least contribute to physical or mental limitation or restriction of a specific functional capacity.").

Accordingly, when the Court views the whole record, "[i]t seems plain that a remand here would serve no purpose" because "[t]he ALJ would simply reach the same conclusion using a few more words"—namely, that in light of his step two analysis, he would add no additional limitations to the RFC based on mild mental impairments. *See Piao v. Comm'r of Soc. Sec.*, No. 20-cv-5480, 2021 WL 5495955, at *3 (E.D.N.Y. Nov. 23, 2021) (rejecting altogether the argument "that the ALJ's use of the term 'moderate' in the Listing analysis [of the paragraph B criteria] required the ALJ to express that finding as a limitation in plaintiff's RFC, or at least explain why he was not doing that"). That is because the record contains abundant support that any non-severe mental impairment did not require a more restrictive RFC. In June 2021, Plaintiff visited Dr. Onal to discuss her depression. *See* AR at 381. Dr. Onal observed that although Plaintiff was "tearful at times," had a "depressed" mood, and self-reported being "distracted while driving," her judgment and insight were "good" and her cognitive function was "intact." *Id.* That assessment, as well as a similar one from December 15, 2021, *see id.* at 493, appear to be the most acute third-party characterizations of her mental health symptoms. As summarized by Defendant, *see* ECF No. 9-1 at 16, doctors do not describe psychiatric symptoms in the rest of her medical records. *See, e.g.*, AR at 386 (Sept. 16, 2020, treatment note from Dr. Onal indicating "normal" psychiatric presentation); *id.* at 492 (same on February 24, 2022).

In addition, at Plaintiff's initial June 2021 visit with Dr. Onal, she was prescribed Wellbutrin for depression, *id.* at 382, and she reported in December 2021 that the medication was "helping a little." *Id.* at 493, 495. Dr. Onal increased the dosage and, from that point on, there appears to be no additional record evidence of notable psychiatric symptoms.

The Court, like the ALJ, finds it important that the medical evidence on this point is basically uniformly consistent with the above. At a March 2, 2022, consultative exam, Dr. Herman found psychiatric findings within normal limits. *See id.* at 502. To be sure, Plaintiff self-reported issues such as "that she can feel tense, upset[,] and down," but did not express "substantial consequences as a result of the mental health symptoms interfering with functioning, reporting that she tends to push herself to do what is necessary." *Id.* In light of this, the physician opined:

> From a psychological/psychiatric perspective currently, there appears to be no evidence of limitation with respect to this claimant's ability to understand, remember and apply simple directions and instructions, use reason and judgment to make simple work related decisions, sustain concentration, consistent pace, ordinary routine and regular attendance, maintain well-being, personal hygiene and appropriate attire, be aware of hazards and take appropriate precautions and interact adequately and regulate emotions in a work setting.
>
> The results of the evaluation appear to be consistent with mild adjustment problems. In and of themselves they do not currently appear to be significant enough to interfere with the claimant's functioning to the extent that vocational functioning would be precluded.

*Id.* at 504. Dr. Herman came to the same conclusion again at a June 23, 2022, consultative exam. *Id.* at 541–44. State agency psychological consultants also reached conclusions consistent with the above in March 2022 and July 2022. *See id.* at 89–99, 102–21; *see also id.* at 13.

Plaintiff contends that the ALJ should have given more attention to her self-reported symptoms, including those she described at her administrative hearing. *See* ECF No. 7 at 10. At that hearing, when describing her past work, she stated that she was "getting a little foggy." AR at 68. When asked by her attorney "what[ was] preventing [her] from working," she pointed to

"what's going on with my spine, my cervical, my thorax, my lower lumbar, and the pain that's involved there, as well as, as you can see, I'm not able to communicate too well." *Id.* at 74.[7] But the evidence she highlights underlines why remand would be futile:  the ALJ already considered it.  For example, when he found a mild limitation in concentrating, persisting, or maintaining pace, he cited her hearing testimony but noted that she "was able to follow along during her hearing without any difficulties." *Id.* at 14.  He similarly looked to her testimony in finding a mild limitation adapting or managing oneself.  *Id.*  For both categories, those conclusions found support in the undisputed evidence highlighted by the ALJ that Plaintiff "is able to perform a range of tasks that require at least some ability to sustain attention and concentration, such as cooking, cleaning, traveling independently, shopping, reading, handling finances, and attending appointments" and "is able [to] maintain a daily routine, including getting up, attending to her personal care tasks, making food, taking her medications, and completing household tasks." *Id.* Thus, it is apparent that the ALJ already weighed—as is the agency's sole prerogative, *see Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998)—the pieces of evidence highlighted by Plaintiff (*e.g.*, her complaint of being "foggy brained" discussed above), and determined that no additional restrictions on the RFC were appropriate.  In light of this, and contrary to Plaintiff's assertion, this is simply not a case in which the Court cannot "follow the logic of the ALJ's determination."  ECF No. 10 at 3.  Indeed, because the Court can follow it clearly, there is no reason to send this case back to the ALJ just for him to repeat these already detailed findings in a formal RFC analysis and inevitably reach the same RFC.

Plaintiff also asserts that the ALJ's decision was not supported by substantial evidence. *See* ECF No. 7 at 3.  Plaintiff does not elaborate on this argument, but to the extent she is

---

[7]    Tellingly, the remainder of the testimony elicited by her attorney focused exclusively on physical symptoms.  *See* AR at 74–79.

advancing a substantive challenge, the Court rejects it.  The medical evidence is overwhelming, so Defendant easily clears the low substantial evidence hurdle.  *See Piao*, 2021 WL 5495955, at *2–3 (finding the RFC supported by substantial evidence after the ALJ failed to restate a step two limitation in his RFC analysis).  Just as in *Cynthia M.*, "Plaintiff has not shown that a reasonable factfinder would have to conclude that additional limitations were required in the RFC finding to account for Plaintiff's mild mental impairments."  2024 WL 4289537, at *9.

## CONCLUSION

The record makes clear that Plaintiff contends with serious health challenges.  The Court appreciates the specific arguments she makes here about her mental health.  However, for the reasons explained above, those arguments fail to show that if the ALJ committed any error in her case, it was a harmful one.  Additionally, the record in this case defeats any challenge to her RFC based on an alleged lack of substantial evidence.  Finding no other error, the Court grants Defendant's motion for judgment on the pleadings and denies Plaintiff's motion.  The Clerk of Court is respectfully directed to enter judgment consistent with this Order and to close this case.

SO ORDERED.

*/s/ Hector Gonzalez*
HECTOR GONZALEZ
United States District Judge

Dated: Brooklyn, New York
       June 9, 2025